UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BENJAMIN ISHMAEL PRICE,

      Petitioner,

v.                          Case No. 3:23-cv-218-HES-SJH

STATE OF FLORIDA,

      Respondent.

_____

## ORDER

### I. Status

Petitioner Benjamin Ishmael Price, an inmate of the Florida penal system, initiated this action in the United States District Court for the Northern District of Florida on February 20, 2023,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] The assigned judge transferred the action to this Court on February 27, 2023. See Order (Doc. 3). In the Petition, Price challenges a 2011 state court (Duval County, Florida) judgment of conviction for first-degree murder and armed robbery. He raises four grounds for relief. See Petition at 9–15. Respondents submitted a memorandum in opposition to the Petition. See Response (Doc.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

12). They also submitted exhibits. See Docs. 12-1 through 12-17. Price filed a brief in reply. See Reply (Doc. 16). This action is ripe for review.

## II. Relevant Procedural History

On July 29, 2010, the State of Florida charged Price by indictment with first-degree murder and armed robbery. Doc. 12-1 at 146–48. On April 28, 2011, a jury found Price guilty as charged in the indictment. Id. at 365–66. The trial court sentenced Price to concurrent terms of life imprisonment. Id. at 414–19. With the assistance of counsel, Price pursued a direct appeal. The First District Court of Appeal (First DCA) per curiam affirmed Price's conviction and sentence on June 12, 2012, Doc. 12-6 at 3, and it issued the mandate on June 28, 2012, id. at 2.

On April 23, 2013, Price filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, raising seven grounds for relief. Doc. 12-7 at 2–51. The postconviction court held an evidentiary hearing, at which court-appointed counsel represented Price. Doc. 12-11. The postconviction court subsequently denied relief on all grounds. Doc. 12-12 at 2–16. On September 29, 2022, the First DCA per curiam affirmed the denial of relief without a written opinion, Doc. 12-17 at 3, and on November 14, 2022, it issued the mandate, id. at 2.

2

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318–19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Price's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

3

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "greatly circumscribed and highly deferential." Id. (internal quotation marks omitted) (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's

adjudication on the merits is unaccompanied by an explanation, the United

States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 584 U.S. 122, 125 (2018). The presumption may be rebutted

by showing that the higher state court's adjudication most likely relied on

different grounds than the lower state court's reasoned decision, such as

persuasive alternative grounds that were briefed or argued to the higher

court or obvious in the record it reviewed. Id. at 125–26, 132.

If the claim was "adjudicated on the merits" in state court, § 2254(d)

bars relitigation of the claim unless the state court's decision (1) "was

contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States;" or

(2) "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d);

Richter, 562 U.S. at 97–98. The Eleventh Circuit describes the limited scope

of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d

389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

6

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Titlow, 571 U.S. at 19. "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102–03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per

curiam) (first citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); and then

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of

any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test

before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part

<u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a

court need not address the performance prong if the petitioner cannot meet

8

the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at ---, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds

9

another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Price alleges that counsel was ineffective when he failed to adequately prepare for trial.[3] Petition at 9. Price raised a substantially similar claim as ground one of his Rule 3.850 Motion. Doc. 12-7 at 9–23. Following an evidentiary hearing, the postconviction court denied the claim, stating in pertinent part:

> Defense counsel met with Defendant on numerous occasions to prepare for trial. He spent more than 230 hours working on Defendant's case. These hours included several visits to the jail to see Defendant as well as conferences with Defendant at the courthouse. Defense counsel kept Defendant apprised on the discovery process. He reviewed the evidence with Defendant, including evidence that was damaging to Defendant's version of events. Defense counsel followed all the leads Defendant asked him to pursue and Defendant never expressed dissatisfaction with counsel's case strategy.

---

[3] In the Petition, Price does not detail any arguments in support of his claims for relief. See generally Petition. Therefore, the Court presumes he adopts all arguments in support of the corresponding claims of ineffective assistance of counsel raised in his Rule 3.850 motion.

10

Defendant also never expressed a belief that defense counsel's trial preparations were inadequate. Defense counsel would have developed an alibi defense if one had been available. However, defense counsel did not develop an alibi defense because Defendant could not establish an alibi for the time period in question.

Defense counsel is a member of the bar in good standing and is highly experienced in defending criminal cases, including those involving a charge of first-degree murder. The Court finds his testimony credible and finds that his testimony conclusively refutes the allegations Defendant makes in Ground One. See Shere v. State, 742 So. 2d 215, 218 n.8 (Fla. 1999) ("the role of the trial judge in an evidentiary hearing is to make credibility determinations and findings of fact . . . ."). It is clear that defense counsel spent many hours competently preparing Defendant's case, which included reviewing discovery, requesting additional discovery, contacting and deposing witnesses, filing motions in limine, and frequently meeting with Defendant. Moreover, defense counsel was not ineffective for failing to develop an alibi defense when Defendant could not point defense counsel to the facts necessary to establish such a defense. Therefore, the Court denies Ground One of Defendant's motion.

Doc. 12-12 at 3–4 (record citations omitted). The First DCA per curiam affirmed the postconviction court's order without a written opinion. Doc. 12-17 at 3–4.

11

To the extent that the First DCA decided this claim on the merits,[4] the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Price is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, Price's ineffectiveness claim is still without merit because the record supports the postconviction court's conclusion. After the evidentiary hearing, the postconviction court resolved the credibility issue in favor of believing counsel's testimony over that of Price. Credibility determinations are questions of fact. See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations). In federal habeas review, a state court's factual determination is presumed correct unless the petitioner can rebut the presumption with clear and

---

[4] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 584 U.S. at 125.

12

convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1). Here, Price has not rebutted the postconviction court's credibility finding by clear and convincing evidence. <u>See</u> <u>Nejad v. Att'y Gen.</u>, 830 F.3d 1280, 1292 (11th Cir. 2016). As such, the postconviction court's factual findings which are presumed correct refute the claim regarding counsel's alleged deficiencies in preparing a defense. Given the postconviction court's credibility determination, Price's claim is wholly unsupported. Price has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance. Accordingly, he is not entitled to federal habeas relief on the claim in Ground One.

## B. Ground Two

Next, Price alleges that counsel was ineffective when he failed to object to the trial court's admission of hearsay statements. Petition at 11. According to Price, Marissa Miaway testified that Ernest Johnson—one of Price's codefendants—stated, "We [Ernest Johnson and Price] killed Jimmy." Doc. 12-7 at 24–25. Price argues that her testimony about the statement constituted impermissible hearsay, and as such, counsel should have objected to it. <u>Id.</u> at 25.

Price raised a substantially similar claim as ground two of his Rule 3.850 Motion. Id. at 23–26. The postconviction court denied the claim, stating:

> Ms. Miaway dated Mr. Johnson for approximately two years. Erica Thomas is Mr. Johnson's sister and Ms. Thomas was Defendant's girlfriend at the time of his offenses in this case. Ms. Thomas was also carrying on a "sugar daddy" relationship with the victim in this case, Jimmy Daughtery. Mr. Daughtery was much older than Ms. Thomas and he provided Ms. Thomas with money, jewelry, and other gifts. Based on his house and his car, Ms. Miaway inferred that Mr. Daughtery was a wealthy man. Ms. Miaway saw Defendant become upset when he first suspected Ms. Thomas had become intimately involved with Mr. Daughtery.
>
> Ms. Miaway attended a social gathering with Ms. Thomas, Mr. Johnson, and Defendant (among others). All members of the group could hear the conversation taking place. Ms. Miaway began to argue with Mr. Johnson, who, in her opinion, was "acting funny." Mr. Johnson told Ms. Miaway to mind her own business. Ms. Miaway "kept pushing" the issue of why Mr. Johnson was acting abnormally and Mr. Johnson eventually confessed, "we killed Jimmy." "We" referred to Mr. Johnson and Defendant. Mr. Johnson explained how he and Defendant killed Mr. Daughtery while robbing him in his hotel room. Defendant heard the entirety of this conversation between Ms. Miaway and Mr. Johnson. Mr. Johnson and Defendant laughed about their conduct. They discussed how Defendant stabbed Mr. Daughtery. Defendant said he stabbed Mr. Daughtery because he believed Mr. Daughtery was having a sexual relationship with Defendant's girlfriend (Ms. Thomas).

Having reviewed the entirety of Ms. Miaway's testimony, the Court finds that her testimony did not include any inadmissible hearsay. Defendant's statements were plainly admissible as admissions by a party-opponent. See § 90.803(18)(a), Fla. Stat. (2011). Moreover, Mr. Johnson's statements, all made in Defendant's presence, are admissible either as (1) statements offered against Defendant in which he manifested a belief or (2) as statements against penal interest made by an unavailable declarant. See § 90.803(18)(b) and § 90.804(2)(c), Fla. Stat. (2011). Because Ms. Miaway did not offer any inadmissible hearsay testimony, defense counsel was not ineffective for failing to object in the manner Defendant now advocates. See Hitchcock v. State, 991 So. 2d 337, 361 (Fla. 2008) ("Counsel cannot be deemed ineffective for failing to make a meritless objection."). Because the record and the law conclusively refute Defendant's claim, the Court denies Ground Two of Defendant's motion.

Doc. 12-12 at 5–6 (record citations omitted). The First DCA per curiam affirmed the postconviction court's order without a written opinion. Doc. 12-17 at 3–4.

To the extent that the First DCA decided this claim on the merits, the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable

15

determination of the facts in light of the evidence presented in the state court proceedings.

When an ineffectiveness claim involves a question of state law, a federal habeas court must defer to the state court's construction of its own law. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (emphasizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). In other words, if Florida courts "already ha[ve] told us how the issues would have been resolved under Florida state law had [counsel] done what [petitioner] argues he should have done," then "federal habeas courts should not second-guess [the state courts] on such matters." Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1354–55 (11th Cir. 2005) (quoting Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Here, the postconviction court determined that Miaway did not offer inadmissible hearsay testimony hearsay under Florida law. The Court is bound by the postconviction court's interpretation of state law. Accordingly, Price is not entitled to relief on the basis of the claim in Ground Two.

### C. Ground Three

In Ground Three, Price brings a claim of newly discovered evidence. Petition at 13. Price asserts that Erica Thomas wrote a letter to Maurice

16

Thomas—one of Price's codefendants. Doc. 12-7 at 27. In the letter, she admitted to testifying falsely at trial that Maurice Thomas was present in the hotel room where the victim was murdered. Id. at 59.

Price raised a substantially similar claim as ground three of his Rule 3.850 Motion. Doc. 12-7 at 27–33. The postconviction court denied relief, explaining:

> The evidence at issue is a 2012 letter that Erica Thomas allegedly wrote to Maurice Thomas in which she admitted to lying during her trial testimony. To qualify as newly discovered evidence, "the evidence must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known of it by the use of diligence." Jones v. State, 709 So. 2d 512, 521 (Fla. 1998) (internal quotation omitted). To entitle a defendant to postconviction relief, newly-discovered evidence "must be of such nature that it would probably produce an acquittal on retrial." Id. When completing the probability-of-acquittal analysis, the Court must (a) consider whether the newly-discovered evidence would be admissible at trial and (b) evaluate both the weight of the admissible newly-discovered evidence and the evidence that was already introduced at trial. Id.
>
> In pertinent part, Ms. Thomas testified that at the time of Defendant's trial, she had been in prison for 38 months for her role in this case. Defendant is her boyfriend. Ernest Johnson is her brother. Maurice Thomas is the father of her sister's child and was also close friends with Ernest Johnson. She met Jimmy Daughtery through her association with Defendant. Defendant encouraged Ms. Thomas to get

17

to know Mr. Daughtery so that they would have the opportunity to rob him.

On the day of the murder, Mr. Daughtery called Ms. Thomas to arrange to meet her at his hotel room in Jacksonville. When he learned of this plan, Defendant told Ms. Thomas they would rob Mr. Daughtery when she went to the hotel. Ms. Thomas provided Defendant with Mr. Daughtery's hotel room information. Ms. Thomas and her mother went to Mr. Daughtery's hotel room. Eventually, Defendant called Ms. Thomas on her cell phone to tell her to get rid of her mother so they could carry out the robbery. Ms. Thomas then left the room under the pretext of merely going to buy cigarettes from a nearby store. After buying cigarettes, Ms. Thomas met up with Defendant, Mr. Johnson, and Mr. Thomas. Ultimately, Defendant, Mr. Johnson, and Mr. Thomas came to Mr. Daughtery's hotel room. Ms. Thomas witnessed the beginning of the robbery before exiting the room because she was scared. Defendant wore a bandana over his face during the criminal episode. Officers later found the bandana at the crime scene and testing confirmed that the bandana contained Defendant's DNA. Indeed, the likelihood of the DNA on the bandana belonging to someone other than Defendant was one in 8.3 quadrillion African Americans.

Even accepting arguendo the letter's authenticity and the veracity of its contents, the letter suggests that Ms. Thomas lied about Mr. Thomas's presence at the crime scene. The letter does not indicate that Ms. Thomas lied about Defendant and Mr. Johnson's presence at the scene. Thus, the letter is not of such a nature that it would probably result in Defendant's acquittal on retrial, especially when viewed in tandem with the remainder of the evidence adduced at trial, including the finding of Defendant's DNA evidence at the crime scene. See

18

Jones, 709 So. 2d at 521. Accordingly, Defendant's claim fails on the merits.

Moreover, the record shows that defense counsel performed competently during his cross-examination of Ms. Thomas, including when he succeeded in getting Ms. Thomas to admit that she lied to her mother and to the 911 dispatch operator about the events in this case. Because the record conclusively refutes the claim raised therein, the Court denies Ground Three of Defendant's motion.

Doc. 12-12 at 6–8 (record citations omitted). The First DCA per curiam affirmed the postconviction court's order without a written opinion. Doc. 12-17 at 3–4.

To the extent Price argues that the letter's contents show his innocence, he does not present a federal claim for relief. The postconviction court, applying Florida law, determined that this newly discovered evidence was insufficient to produce an acquittal. Federal habeas courts do not sit to make independent determinations of a petitioner's guilt or innocence based on evidence discovered since trial. Brownlee v. Haley, 306 F.3d 1043, 1065 (11th Cir. 2002). Price does not allege an independent constitutional violation relating to his newly discovered evidence claim; therefore, the claim in Ground Three is due to be dismissed.

Even assuming Price presented a federal claim, he would still not be entitled to relief. In his Reply, Price invokes <u>Brady</u>,[5] arguing the State "willfully or inadvertently . . . failed to test the veracity of their witness." Reply at 31. Insofar as Price asserts a <u>Brady</u> claim in Ground Three, he failed to fairly present this claim to the state court. <u>See</u> <u>Preston v. Sec'y, Fla. Dep't of Corr.</u>, 785 F.3d 449, 456–59 (11th Cir. 2015). As such, the claim is unexhausted and procedurally defaulted. Because Price offers no cause for and prejudice resulting from the procedural default, his claim can be denied on this basis alone.

Nevertheless, Price's claim also fails on the merits. To prevail on a <u>Brady</u> claim, the defendant must establish: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; the evidence was suppressed by the State, either willfully or inadvertently; and the defendant incurred prejudice." <u>Strickler v. Greene</u>, 527 U.S. 263, 281–82 (1999). <u>Brady</u>'s prejudice prong, also referred to as the "materiality prong," is met when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Kyles v. Whitley</u>, 514 U.S. 419, 433 (1995) (quoting <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985)).

---

[5] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

Price does not demonstrate a reasonable probability that, had the defense known about Erica Thomas's allegedly false testimony, the result of the proceeding would have been different. Indeed, as detailed in the postconviction court's order, the State presented significant evidence, including DNA, against Price. And, while the letter certainly impugns Erica Thomas's credibility as a witness, she admits only to lying about Maurice Thomas's, not Price's, presence at the crime scene. Because Price fails to establish prejudice, the Court finds there can be no <u>Brady</u> violation. Accordingly, Price is not entitled to relief on the basis of the claim in Ground Three.

### D. Ground Four

Last, Price argues that counsel was ineffective when he failed to impeach Joseph Stewart and Marissa Miaway with their prior inconsistent statements. Petition at 15. Price raised a substantially similar claim as ground four of his Rule 3.850 Motion. Doc. 12-7 at 33–40. The postconviction court denied relief, stating in pertinent part:

> Mr. Stewart testified that the sounds from the adjacent hotel room were loud enough for him to hear noise over his television and microwave. The noise sounded like furniture being moved and people wrestling around. The noise became so loud that he pounded on the wall to ask for quiet, at which point the noise subsided. During cross-examination, Mr. Stewart acknowledged that he could not distinguish

21

individual voices from the room next door and that he did not hear any screams. He also conceded that while he saw three people leave the hotel room, he did not get a good look at them.

Mr. Stewart's trial testimony was consistent with Detective Stapp's findings when he processed the room: the furniture appeared to be moved out of place, the trash can was turned over, the victim's hands were bound with duct tape, and the telephone cord appeared to have been pulled from the phone's base. Furthermore, the medical examiner testified that the victim suffered blunt-force trauma, including multiple lacerations to his head and face, as well as sharp-force trauma, which included stab wounds to his head, face, neck, and abdomen. The victim also suffered a gunshot wound to the abdomen, which caused significant blood loss.

In sum, the record evidence showed there was indeed a violent struggle in the victim's hotel room prior to his death. As such, even if defense counsel had tried to impeach Mr. Stewart's testimony using his initial statement to police about the sounds he heard through the walls, there is no reasonable probability such impeachment would have changed the trial's outcome because there was no doubt about the chaotic state of the victim's hotel room. See Strickland, 466 U.S. at 688. Additionally, Mr. Stewart's account of how many people he saw leaving the victim's hotel room was immaterial to the trial's outcome because Defendant's version of events was that Defendant was not at the crime scene and Mr. Stewart did not claim that he saw Defendant at the scene.

As to Ms. Miaway, Defendant claims she changed her story about what Ernest Johnson said regarding where on the victim's body the gunshot wound was located. Defendant claims that in her

22

deposition, Ms. Miaway stated that Mr. Johnson told her that he shot the victim in the head. Defendant alleges Ms. Miaway did not repeat this claim at trial because by then, the medical evidence showed otherwise.

At trial, Ms. Miaway testified that Mr. Johnson told her that he shot the victim because the victim managed to take away Defendant's knife during their struggle. The precise location of the gunshot wound on the victim's body was not a disputed issue at trial, as the medical examiner offered unrebutted testimony that Defendant died from a gunshot wound to his abdomen. Mr. Johnson's alleged statement about where on the victim's body the gunshot wound was located was not material to the issue of Defendant's guilt. As such, there is no reasonable probability the outcome of Defendant's trial would have changed if only defense counsel had impeached Ms. Miaway's testimony in the manner Defendant now describes.

Defendant also alleges Ms. Miaway told detectives that she saw the co-defendants covered in blood after murdering the victim in Kingsland, Georgia. At trial, Ms. Miaway explained that she initially assumed the murder took place in Georgia because she knew the victim lived in Georgia. Moreover, the record shows that regardless of Ms. Miaway's initial assumption to the contrary, there is no doubt the murder occurred in Jacksonville. As for Ms. Miaway's alleged pre-trial statement about seeing the defendants covered in blood, she made no such contention during trial. And Defendant cannot show how it would have benefited his case for defense counsel to try to elicit such inculpatory testimony at trial. Because the record conclusively demonstrates that Defendant cannot satisfy the prejudice prong of Strickland, the Court denies Ground Four of his motion.

Doc. 12-12 at 8–10 (record citations omitted). The First DCA per curiam affirmed the postconviction court's order without a written opinion. Doc. 12-17 at 3–4.

To the extent that the First DCA decided this claim on the merits, the Court applies the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Price is not entitled to relief on the basis of the claim in Ground Four.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Price seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Price "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

24

debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El</u>, 537 U.S. at 335–36 (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now **ORDERED**:

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Price appeals the denial of the Petition, the Court denies a
certificate of appealability. Because the Court has determined that a
certificate of appealability is not warranted, the Clerk shall terminate from
the pending motions report any motion to proceed on appeal as a pauper that
may be filed in this case. Such termination shall serve as a denial of the
motion.

4.      The Clerk is directed to close this case and terminate any
pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of
January, 2026.

HARVEY E. SCHLESINGER
United States District Judge

Jax-9 1/15
c:      Benjamin Ishmael Price #J44510
        Counsel of record

26